## THOMPSON v. W. E. COLLINS & SON.
### No. 12580.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 25, 1953.

Rehearing Denied Dec. 30, 1953.

Sharpe, Cunningham & Garza, George W. Storter, Brownsville, for appellant.

Ward & Brown, Corpus Christi, for appellee.

W. O. MURRAY, Chief Justice.

This cause was originally two separate suits in which the consignee of certain bills of lading sued the delivering carrier, alleging damages incurred in transit to a large amount of seed potatoes. The potatoes involved were originally loaded into ten different railway cars, at stations in the State of Nebraska, between December 3, 1948, and December 8, 1949, and shipped on a through bill of lading to Brownsville, Texas. The cars were stopped at San Benito, Texas, where the potatoes were unloaded, dipped in a solution of formaldehyde, reloaded into the same railway cars and carried on to Brownsville, Texas. When the potatoes were delivered to the consignee at Brownsville, a large number of the potatoes had become decayed and were worthless. The potatoes were shown to be in good condition when loaded in Nebraska. The trial was to the court without a jury and, at the close of the trial, judgment was rendered in favor of the consignee, W. E. Collins and Son, against Guy A. Thompson,

trustee for the St. Louis, Brownsville & Mexico Railway Company, in Cause No. 28832–A for the sum of $2,479.13, and in Cause No. 28833–A for the sum of $1,918.63, from which judgments Guy A. Thompson prosecuted appeals which have been here consolidated.

The trial court made the following finding:

"4. The damage to the potatoes existing at the time of their delivery by defendant to plaintiffs at Brownsville, was caused, in whole or in part, by the carriers' failure to comply with the shipper's instructions to accord the potatoes carriers' protective service as provided in carriers' applicable perishable protective tariffs."

■ Appellant contends that the evidence does not support this finding. This contention is based upon the fact that an inspection of the potatoes, when they arrived at San Benito, showed no damage, and that there was no evidence of any carriers' failure to comply with the shipper's instruction when moving the potatoes to Brownsville. Appellant introduced evidence, by persons who have handled potatoes in similar shipments to San Benito and Brownsville for many years, to the effect that if the potatoes had been frozen en route some evidence of that freezing would show by the time the potatoes reached San Benito. All of this evidence was disputed. There was testimony that there was evidence of damage at the time the potatoes arrived in San Benito and, further, that if the potatoes were damaged by freezing, it might not become apparent for some time thereafter unless the potatoes were cut into and examined. There was testimony to support the trial court's further finding that the potatoes were not damaged by dipping them in the formaldehyde solution, or in loading them back in the cars at San Benito for further transportation to Brownsville, and that the shipper did not permit the potatoes to remain in closed cars at Brownsville sufficiently long to damage them. The trial court also found, on sufficient evidence, that the car-

riers failed to accord to the potatoes proper heater service in transit, in some instances, and, in other instances, failed to manipulate the vents and plugs in accordance with the shipper's instructions and the applicable carriers' perishable protective tariffs. The potatoes en route passed through some very cold weather. Under all of these circumstances, we overrule appellant's contention that the evidence does not support finding No. 4, fully set out above.

■ Appellee having shown and the court having found that the potatoes when delivered to the carrier in Nebraska were in good condition and that they were damaged when they arrived at Brownsville, and further that they were not damaged by dipping them in the formaldehyde solution or in loading them back in the cars at San Benito, was entitled to recover under the provisions of the Carmack Amendment fixing carriers' contractual liability, U.S.C.A. Title 49, § 20(11).

■ Appellant contends that the trial court erred in finding: "11. The damage to such potatoes was not caused by natural shrinkage or inherent vice therein." We overrule this contention. It is true that the certificate of inspection made at the point of origin, on the various carloads of potatoes, showed that there was a percentage of damage which necessarily should result in wastage at destination. However, the potatoes were not for human consumption, but for planting seed. In that process, the potatoes are cut into pieces, having an eye in each piece so that it will sprout. If decay is present it is cut off. There was no soft rot present at origin. There was evidence that the potatoes were in perfect condition when loaded. There was sufficient evidence to support finding number eleven by the trial court.

We do not find it necessary, in view of our other holdings herein, to pass upon the question of estoppel of appellant to deny liability, because its agent supervised the salvaging of the potatoes.

The judgments are affirmed.